UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CELINA K.,[1]                          )
                                       )
                   *Plaintiff*,        )
                                       )
         *v.*                          )          No. 1:21-cv-00205-MG-JRS
                                       )
KILOLO KIJAKAZI, Acting Commissioner of the  )
Social Security Administration,        )
                                       )
                   *Defendant*.        )

### **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

On December 12, 2018, Plaintiff Celina K. applied for supplemental security income

benefits ("SSI") from the Social Security Administration ("SSA"), alleging a disability onset date

of September 15, 2018.  [Filing No. 19-5 at 2-7.]  Her application was initially denied on January

24, 2019, [Filing No. 19-3 at 2-11; Filing No. 19-4 at 2-5], and upon reconsideration on May 9,

2019, [Filing No. 19-3 at 12-25; Filing No. 19-4 at 9-11].  Administrative Law Judge Livia Morales

(the "ALJ") conducted a hearing on September 10, 2020.  [Filing No. 19-2 at 31-74.] The ALJ

issued a decision on October 1, 2020, concluding that Celina K. was not entitled to receive benefits.

[Filing No. 19-2 at 13-30.]  The Appeals Council denied review on November 23, 2020.  [Filing

No. 19-2 at 2-6.]  On January 26, 2021, Celina K. filed this civil action asking the Court to review

the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the
recommendation of the Court Administration and Case Management Committee of the
Administrative Office of the United States courts, the Southern District of Indiana has opted to use
only the first name and last initial of non-governmental parties in its Social Security judicial review
opinions.

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  [Filing No. 13.]  For the reasons set forth below, the Court **AFFIRMS** the ALJ's decision denying Celina K. benefits.

## I.
### STANDARD OF REVIEW[2]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019).  Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ (and the Appeals Council) applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Id.*  For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154).  "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327.  Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the

---

[2] The regulations governing disability determinations for DIB under Title II and SSI under Title XVI are identical in virtually all relevant respects unless otherwise noted.

conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's

decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Celina K. was 42 years old on the date of her alleged onset of disability and has a high-school education. [*See* Filing No. 19-2 at 59-60.] Celina K's original application alleges that she can no longer work because she suffers from major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder ("PTSD").[3] [Filing No. 19-6 at 17.]

The ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Celina K. was not disabled. Specifically, the ALJ found as follows:

- At Step One, Celina K. had not engaged in substantial gainful activity since December 12, 2018—*i.e.*, the date of Celina K.'s application. [Filing No. 19-2 at 18.]

- At Step Two, Celina K. had the following severe impairments: "persistent depressive disorder (dysthymia), generalized anxiety disorder, and borderline personality disorder." [Filing No. 19-2 at 18.]

- At Step Three, Celina K. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments—specifically Listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.08 (personality and impulse-control disorders). As to the "paragraph B" criteria used for each of these listings, the ALJ found that Celina K. had "moderate" limitations in each of the four areas: (1) understanding, remembering, or

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. [Filing No. 19-2 at 19-20.]

- After Step Three but before Step Four, the ALJ determined that Celina K. had the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: she is able to perform simple, routine, and repetitive tasks but not at a production rate pace (e.g. assembly line work).  She is able to perform and make simple work-related decisions.  She is able to interact with supervisors frequently.  She is able to interact with coworkers occasionally.  She is able to interact with the public never.  She works best in semi-isolation or small groups." [Filing No. 19-2 at 20.]

- At Step Four, the ALJ found that Celina K. had no past relevant work.  [Filing No. 19-2 at 25.]

- At Step Five, relying on the testimony of a vocational expert ("VE") and considering Celina K.'s age, education, work experience, and RFC, the ALJ determined there are jobs existing in significant numbers in the national economy that Celina K. could perform, such as Cleaner II, Hand packer, and Industrial cleaner.  [Filing No. 19-2 at 25-26.]

### III.
### DISCUSSION

Celina K. argues that the ALJ's RFC (and the corresponding hypothetical posed to the VE) was not supported by the substantial evidence because: (1) the RFC does not adequately reflect Celina K.'s moderate limitations in the areas of concentration, persistence or pace ("CPP") and interacting with others; and (2) the ALJ failed to properly address the opinion of Celina K's mental health counselor.

### A.  Mental RFC

Celina K. contends that although the ALJ found persuasive the mental RFC opinions of two state agency consultants—Dr. Amy Johnson, PhD and Dr. Kari Kennedy, PsyD—the ALJ failed to incorporate all aspects of Dr. Johnson and Dr. Kennedy's opinions in the RFC and hypothetical.  [See Filing No. 27 at 13.]  Specifically, Celina K. argues that the RFC does not

adequately reflect the limitations the consultants found in Celina K's ability to maintain CPP and interact with others.  Each argument is addressed below.

### 1.  CPP Limitations

Dr. Johnson and Dr. Kennedy opined that Celina K. was moderately limited in her ability to concentrate, persist, or maintain pace.  [Filing No. 19-3 at 18.]  As part of the so-called "checkbox" limitations addressing CPP, the consultants found that Celina K. was "moderately limited" in her ability to "carry out detailed instructions," "maintain attention and concentration for extended periods," "complete a normal workday and workweek without interruptions," and "perform at a consistent pace without an unreasonable number and length of rest periods."  [Filing No. 19-3 at 20.]  In the narrative portion of her opinion, Dr. Johnson went on to explain that:

> The totality of evidence in file suggests that the claimant is able to: understand, carry out and remember simple instructions; able to make judgments commensurate with functions of simple, repetitive tasks….

[Filing No. 19-3 at 21.]  Dr. Kennedy confirmed her agreement with this assessment.  [Filing No. 19-3 at 21-22.]  The ALJ found these opinions persuasive.  [Filing No. 19-2 at 24.]  The ALJ adopted the following CPP limitation in the RFC: "she is able to perform simple, routine, and repetitive tasks but not at a production rate pace (e.g. assembly line work)."  [Filing No. 19-2 at 20.]

In her brief, Celina K. argues that when a claimant is moderately limited in the area of CPP, like she is, an RFC limitation of "simple, routine tasks" is insufficient as a matter of law and cites Seventh Circuit cases in support of that proposition.  [Filing No. 27 at 16-17.]  She summarizes this caselaw by stating that "these cases represent that the monotony or required skill level of a work task does not equate to a limitation which addresses a person's moderate difficulty in maintaining their attention or concentration over a sustained period of time."  [Filing No. 27 at

17.] She says the ALJ "simply ignored the checkbox limitations" in crafting the RFC. [Filing No. 27 at 18.]

In response, the Commissioner cites the Seventh Circuit's opinion in *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021), in which the court held that ALJs can reasonably rely on state consultants' narrative opinions in crafting CPP limitations because the narrative opinions translate the checklist limitations into an appropriate RFC. [Filing No. 28 at 9.] The Commissioner says that, here, the RFC adopted by the ALJ tracks the narrative opinions of the state consultants and therefore the RFC was supported by the evidence. [Filing No. 28 at 10.]

In reply, Celina K. says that this case is distinguishable from the *Pavlicek* decision because "the consultants did not provide a narrative explanation that accounted for what those [CPP] limitations would be, so only the checkbox findings suggested appropriate limitations." [Filing No. 29 at 2.] She argues that "the absence of specific concentration limitations in the narrative means that the ALJ needed to take into account the moderate checkbox limitations to ascertain exactly how Plaintiff's concentration was limited, instead of ***just*** relying on the narrative that did not address those limitations." [Filing No. 29 at 2 (emphasis in original).]

CPP "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E(3). A "moderate limitation" means that a claimant's functioning in a particular area is "fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00F(2). "'Fair' in ordinary usage does not mean 'bad' or 'inadequate.' So a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." *Pavlicek*, 994 F.3d at 783.

"[W]hen an ALJ finds there are documented limitations of [CPP], the hypothetical question presented to the VE must account for these limitations." *Winsted v. Berryhill*, 923 F.3d 472, 476

(7th Cir. 2019). Employing terms like "simple, repetitive tasks" on their own will not necessarily account for problems captured by CPP. *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). This is so because "observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Id.* However, in certain cases, "[e]ven generic limitations, such as limiting a claimant to simple, repetitive tasks, ***may*** properly account for moderate limitations in [CPP], so long as they adequately account for the claimant's demonstrated psychological symptoms found in the record." *Urbanek v. Saul*, 796 F. App'x 910, 915 (7th Cir. 2019) (internal quotation and citation omitted) (emphasis added).

Instead of explaining why the record evidence supports a different CPP limitation in the RFC, Celina K. posits that limiting a claimant to simple, routine tasks is *per se* inadequate. But, the Seventh Circuit has expressly disavowed this theory, finding instead that facts in a given case matter. *See Lockett v. Saul*, 834 F. App'x 236, 239 (7th Cir. 2020) ("Lockett cannot show a need for pace-specific restrictions in his [RFC] simply because of the 'moderate' designation; he must have evidence of that need, and he cites none."). More recently, in *Pavlicek*, the Seventh Circuit explained that it is reasonable for an ALJ to rely on a state agency consultant's narrative when the narrative is consistent with a "moderate" checklist rating. *Pavlicek*, 994 F.3d at 783. This holding reaffirmed cases like *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019), in which the Seventh Circuit affirmed an RFC limiting a claimant to simple, routine tasks and simple decisions where "[t]he ALJ appropriately relied on the narrative statement [of a medical opinion] in crafting the hypothetical to the [VE] and the RFC." *Id. See also Lockett*, 834 F. App'x at 239 (affirming limitation to simple, repetitive tasks where "the medical expert … testified that [claimant] could

work in a 'simple, repetitive, routine work environment with only occasional interaction with the public" because "[t]he ALJ was entitled to rely on this opinion").

Here, the two state agency consultants relied upon by the ALJ opined in their narratives that Celina K. is "able to understand, carry out and remember simple instructions" and "able to make judgments commensurate with functions of simple, repetitive tasks." [Filing No. 19-3.] These findings are consistent with the consultants' checkbox determinations that Celina K. had moderate limitations in carrying out detailed instructions, maintaining concentration for extended periods, and completing tasks at a consistent pace without unreasonable breaks. The ALJ adopted the narrative findings and added the additional restriction that Celina K. could not perform at a production rate pace. The ALJ did not error by relying on these opinions to craft Celina K.'s RFC.

Furthermore, there was no significant evidence in the record that Celina K. was unable to concentrate on work. This distinction sets this case apart from *Winsted v. Berryhill*, 923 F.3d 472 (7th Cir. 2019), a case relied upon by Celina K. in her briefing. In that case, the record contained multiple medical opinions that the claimant had serious issues with concentration and attention, including the opinion of a state agency consultant that the claimant had "below average levels of mental control, understanding and memory, and concentration; poor levels of persistence." *Id.* at 475. No such evidence is present here, and, certainly, Celina K. has not directed the Court to such evidence in her briefing. *See Lockett*, 834 F. App'x at 239 ("[Claimant] points to no evidence that compelled a finding that he required more restrictions than [the medical expert] recommended."). In sum, the undersigned finds that substantial evidence supports the portions of the RFC addressing CPP limitations.

### 2. Social Limitations

Dr. Johnson and Dr. Kennedy found that Celina K. was moderately limited in her ability to interact with others.  [Filing No. 19-3 at 18.]  They also concluded that she was "moderately" limited in one checkbox rating: the "ability to interact appropriately with the general public." [Filing No. 19-3 at 20.]  On the other hand, Drs. Johnson and Kennedy found Celina K. was **not** significantly limited in her ability to interact with supervisors and co-workers.  [Filing No. 19-3 at 20.]  In the narrative portion of her opinion, Dr. Johnson went on to explain that:

> [Celina K. is] [a]ble to respond appropriately to brief supervision and interactions with coworkers and work situations; able to deal with basic changes in a routine setting; *** able to manage occasional contact with the public but sustained, intensive interpersonal contact would be precluded.  The claimant would appear to work best alone, in semi-isolation from others or as part of a small group.  Totality of the MER suggests the claimant seems to be able to maintain at least a minimal level of relationship with others.

[Filing No. 19-3 at 21.]  Dr. Kennedy confirmed her agreement with this assessment.  [Filing No. 19-3 at 21-22.]  The ALJ adopted the following social limitation in the RFC:  "She is able to interact with supervisors frequently.  She is able to interact with co-workers occasionally.  She is able to interact with the public never.  She works best in semi-isolation or in small groups." [Filing No. 19-2 at 20.]

Celina K. argues that the ALJ's RFC conflicts with the agency consultants' narrative regarding social limitations.  [Filing No. 27 at 19.]  More specifically, Celina K. notes that the RFC found she was able to perform jobs where she is required to "interact with supervisors **frequently**," [Filing No. 19-2 at 20 (emphasis added)], whereas the state agency consultants' narrative opinion says that she is only "[a]ble to respond appropriately to **brief** supervision and interactions," [Filing No. 19-3 at 20 (emphasis added).]  Celina K. argues that "brief supervision" is incompatible with "frequent" interactions with supervisors and cites SSR 83-10 to define

"frequent" as "something that occurs from one-third to two-thirds of the time." [Filing No. 27 at 19-20.]

The Commissioner responds that interacting frequently with supervisors and briefly with supervisors are not mutually exclusive. [Filing No. 28 at 10-11.]  The Commissioner says that "[n]otably, the consultants did not place any restriction on the quantity (e.g., frequent, occasional, etc.) of [Celina K.'s] interactions with supervisors, only that the quality of the supervision be brief." [Filing No. 28 at 10.]  The Commissioner also cites the consultants' checkbox rating that found Celina K. was not significantly limited in her ability to accept instructions and respond appropriately to supervisors.  [Filing No. 28 at 11.]

In reply, Celina K. argues the ALJ implicitly rejected the consultants' "brief supervision" opinion without explanation, and the ALJ had an obligation to explain the rejection.  [Filing No. 29 at 3-4.]

The ALJ must always take care to ensure that the RFC "include[s] all of a claimant's limitations supported by the medical record." *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021).  "Crucially, however, an ALJ need only include limitations that are supported by the medical record." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022).  As noted above, ALJs may rely on a consultant's narrative assessment so long as the narrative is consistent with the consultant's checkbox ratings.  *Pavlicek*, 994 F.3d at 783.

Here, Celina K. argues that the consultants' narrative explanation that she can "respond appropriately to brief supervision," is inconsistent with the RFC finding that she could interact with supervisors frequently.  The Seventh Circuit recently addressed a similar argument.  In *Reynolds v. Kijakazi*, 25 F.4th 470 (7th Cir. 2022), the ALJ credited the opinion of a state consultant who opined that the claimant could "respond appropriately to brief supervision and

interactions with co-workers in work settings." *Id.* at 472 (internal quotation marks and alterations omitted).  The ALJ's RFC limited the claimant to "occasional interaction with co-workers and supervisors." *Id.*  On appeal, the claimant argued that the consultant's opinion stating that claimant could "respond appropriately to brief supervision" required the ALJ to include a qualitative limitation in the RFC, describing the nature of the interaction allowable between the claimant and her supervisors. *Id.* at 473-74.  The Seventh Circuit rejected this argument, finding that the state consultant's opinion concerning "brief supervision" did not include a qualitative limitation and no medical evidence indicated greater limitations than the "occasional interaction" contained in the RFC. *Id.* at 474.  In so holding, the Seventh Circuit also rejected the claimant's use of DOT regulations to define "occasional interaction," because the "DOT definition does not refer to interactions with others; instead it refers to the frequency with which an employee would have to exert various amounts." *Id.*  SSR 83-10, cited by Celina K., likewise refers to the amount of a worker would be expected to engage in exertional demands. *See Aaron S. v. Kijakazi*, 2022 WL 2680170, at *8 (S.D. Ind. July 12, 2022).

Here, unlike the claimant in *Reynolds*, Celina is not arguing that the ALJ should have included qualitative limitations.  Instead, she is arguing only about quantity, *i.e.*, that "respond[ing] appropriately to brief supervision" is inherently more restrictive than being able to "interact with supervisors frequently."  But her argument is problematic for a few reasons.

First, "brief" and "frequent" are not directly in conflict.  The SSA rules and regulations do not provide definitions,[4] so the Court looks to dictionary definitions. *See, e.g.*, *Rose v. Comm'r of Soc. Sec.*, 2022 WL 1165001, at *5 n.4 (N.D. Ind. Apr. 20, 2022) (citing dictionary definitions to

---

[4] Keep in mind that the Seventh Circuit expressly stated in *Reynolds* that DOT definitions are inappropriate in this context. *Reynolds*, 25 F.4th at 474.

interpret an ALJ's decision).  The adjective "brief" means "short in duration, extent, or length; concise; curt, abrupt," and its antonyms include "long-winded, verbose, wordy."  "Brief," Merriam-Webster.com Dictionary, *available at* www.merriam-webster.com/dictionary/brief (last accessed Sept. 15, 2022).  On the other hand, the adjective "frequent" means "common, usual; happening at short intervals; often repeated or occurring," with an antonym of "rare." "Frequent," Merriam-Webster.com Dictionary, *available at* www.merriam-webster.com/dictionary/frequent (last accessed Sept. 15, 2022).  Thus, "brief" describes ***duration***, while "frequent" describes the ***prevalence*** of an activity.[5]

Second, the consultants expressly found that Celina K. was not significantly limited in her ability to interact with and receive instruction from supervisors.  [Filing No. 19-3 at 20.]  This evidence supports the ALJ's RFC finding that Celina K. was capable of interacting with supervisors frequently.

Finally, and perhaps most importantly, Celina K. has not identified evidence supporting greater restrictions for interactions with supervisors than those contained in the RFC.  *See Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) ("[T]here is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ.").  Accordingly, the ALJ's RFC finding regarding social interactions is supported by substantial evidence.

### B.  Opinion of Celina K.'s Licensed Mental Health Counselor

Douglas Phillips, a licensed mental health counselor who began counseling Celina K. in July 2019, provided an undated mental RFC questionnaire.  [Filing No. 19-9 at 96-100.]  In the

---

[5] Indeed, the SSA regulations recognize the distinction between duration and frequency.  *See, e.g.*, SSR 16-3p (requiring the SSA to evaluate a claimant's stated "frequency and duration of the symptoms"); SSR 19-4p (noting that in evaluating headache disorders, the SSA will consider the frequency and duration of a headache).

questionnaire, Counselor Phillips opined that Celina K. is significantly limited in a number of

mental functional capacities such that she is unable to meet competitive standards for employment.

[Filing No. 19-9 at 98-100.]  The ALJ addressed Counselor Phillips' opinion but found it to be

only partially persuasive, explaining as follows:

> In an undated form submitted in September 2020, her counselor opined she had
> severe depression and anxiety with poor prognosis despite improvements in
> treatment.  Her counselor opined she had serious limitations or inability to meet
> competitive standards in most areas of mental abilities and aptitudes needed to do
> unskilled, semiskilled, or skilled work.  She also had serious limitations interacting
> appropriately with the general public and traveling in unfamiliar places.  She was
> unable to meet competitive standards in maintaining socially appropriate behavior
> and using public transportation.  She would be absent from work more than four
> days per month due to her impairments and treatment.  Her counselor added that
> she struggled with being with other people and maintaining tasks consistently
> (Exhibit 6F).  This opinion is partially persuasive.  Although her treatment notes do
> show fluctuating self-reports of anxiety, stress, and feeling overwhelmed, her
> objective mental status exams are within normal limits.  Further, her treatment notes
> report activities of daily living that were not inconsistent with her testimony or with
> her inability to set realistic goals.  There is insufficient information to support such
> significant limitations on social interactions.  She is not currently taking
> medication, but there was improvement when she did.

[Filing No. 19-2 at 24-25.]

Celina K. argues that the ALJ's analysis of Counselor Phillips' opinion "falls short of clearly

articulating the (in)consistency and (un)supportability of a medical source opinion as required."

[Filing No. 27 at 21.]  Celina K. says that the ALJ's observation that her objective mental status

exams are within normal limits is "at least partially wrong" because Counselor Phillips' clinical

notes also describe Celina K. on various occasions as being "concerned," "anxious," "aggravated,"

or "irritated."  [Filing No. 27 at 21.]

In response, the Commissioner says that under SSA regulations, counselors are not deemed

acceptable medical sources, so the ALJ had no obligation to evaluate Counselor Phillips' opinion

under the medical opinion standard.  [Filing No. 28 at 11.]  The Commissioner also notes that the

record shows that Celina K. repeatedly sought a psychiatrist to provide an opinion supporting disability, but they refused. [Filing No. 28 at 11.]  In any event, the Commissioner says, the ALJ "accurately summarized [Counselor Phillips'] opinions regarding [Celina K.'s] mental capacity for work and explained the evidence-based reasons for finding the opinion only partially persuasive." [Filing No. 28 at 11.]

In reply, Celina K. argues that the Commissioner's discussion of "acceptable medical sources" is outdated.  [Filing No. 29 at 4.]  All medical source opinions are now evaluated under the considerations set forth in 20 C.F.R. § 416.920c, and further, a "medical source" is defined to include "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law…."  [Filing No. 29 at 4 (quoting 20 C.F.R. § 416.913).]  Celina K. says Counselor Phillips meets the definition of "medical source" because licensed mental health counselors are licensed healthcare providers under Indiana law.  [Filing No. 29 at 4-5.]

Because Celina K. filed for benefits after March 27, 2017, 20 C.F.R. § 416.920c provides the framework for the ALJ's evaluation of medical source opinions.  Under this framework, ALJs will evaluate all medical source opinions using the following factors: supportability, consistency, relationship with the claimant, specialization, and any other factors which tend to support or contradict the medical opinion.  20 C.F.R. § 416.920c(c).  The opinion of a claimant's treating physician no longer receives controlling weight.  20 C.F.R. § 416.920c(a).  "Instead, the most important factors are a medical opinion's supportability and consistency with the evidence in the record."  *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022) (internal quotation marks omitted). These are the factors that the ALJ must explicitly discuss, whereas the ALJ need only consider the other factors.  20 C.F.R. § 416.920c(b).

For a medical opinion to be supportable, it must be based on "the objective medical evidence and supporting explanations." 20 C.F.R. § 416.920c(c)(1).  "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §416.920c(c)(1).  Similarly, for an opinion to be consistent, it must be, reductively, consistent with the record.  20 C.F.R. § 416.920c(c)(1).  "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1).

To start, to the extent that the Commissioner is contending that the ALJ had no obligation to consider Counselor Phillips' opinion because it is not an acceptable medical source, the Court rejects such an argument.  Celina K. filed her claim after March 27, 2017, so the ALJ properly analyzed Counselor Phillips' opinion under the rubric provided in 20 C.F.R. § 416.920c.

The ALJ found Counselor Phillips' opinion to be "partially persuasive" after reviewing and explaining the record in detail.  [Filing No. 19-2 at 24-25.]  The ALJ addressed the consistency of Counselor Phillips' opinion, noting that Celina K.'s "objective mental status exams are within normal limits" and Counselor Phillips' own treatment notes "report activities of daily living that were not inconsistent with her testimony or with her inability to support such significant limitations on social interactions."  [Filing No. 19-2 at 25.]  The ALJ addressed the supportability by explaining that there was "insufficient information to support such significant limitations." [Filing No. 19-2 at 25.]  The ALJ also observed that Celina K. was "not currently taking medication, but there was improvement when she did." [Filing No. 19-2 at 25.]

16

Focusing on the required factors of supportability and consistency, the ALJ provided sufficient support for the conclusion that Counselor Phillips' opinion is only partially persuasive. The ALJ exhaustively summarized the record, including Counselor Phillips' treatment notes, demonstrating inconsistencies between Counselor Phillips' opinion about Celina K's limitations and his observations and Celina K.'s reported activities.  [*See* Filing No. 19-2 at 21-23; Filing No. 19-2 at 25.] *See Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (noting that courts read the ALJ's decision as a whole and with common sense).  Celina K. points to treatment notes where Counselor Phillips described Celina K. as "concerned," "anxious," "aggravated" or "irritated" to argue that the ALJ was "wrong" in her assessment that Counselor Phillips' opinion was not consistent.  [Filing No. 27 at 21.]   However, this argument is not well developed and ignores the ALJ's statement that "treatment notes do show fluctuating self-reports of anxiety, stress, and feeling overwhelmed." [Filing No. 19-2 at 25.]  In sum, the ALJ considered both the consistency and supportability of Counselor Phillips' opinion with the medical record as a whole and articulated her reasons for finding the opinion only partially persuasive.

## IV.
### CONCLUSION

For the reasons detailed above, the Court **AFFIRMS** the ALJ's decision denying Celina K. benefits.  Final judgment will issue by separate entry.


Date: 9/23/2022

Mario Garcia
United States Magistrate Judge
Southern District of Indiana


**Distribution via ECF to all counsel of record.**